The last case is Medtronic v. Teleflex Innovations, 2022-17-21-22, Ms. Lopheimer. Thank you, Your Honors. Madeline Lopheimer on behalf of Medtronic. The Board was wrong to find that E2 is not prior art to Teleflex's claims, and so finding it allowed Teleflex to take for itself what E2 put in the public domain first. Ms. Lopheimer, for you to prevail, do you have to overturn the Board's findings on both actual reduction to practice and constructive reduction to practice? Yes, Your Honor. Okay. So we could just affirm on constructive reduction to practice here, without reaching the actual reduction to practice? Yes, the Court could affirm on either actual reduction to practice. Is it fair to say you don't have an argument in your briefing on constructive reduction to practice? No, Your Honor. I think we expressly raised our disagreement with the Board's opinion on constructive reduction to practice. At page 41? At page 41 of our brief and in our statement of the issues. We followed the Board's lead in referring to the identical question that had been briefed in the prior appeal. I guess what I'm wondering is, are you trying to incorporate by reference briefing from a separate appeal into this brief for this appeal? I think that the issue has been fully briefed in that prior appeal and that the Court has everything it needs to decide the question in that appeal. So you're not trying to incorporate by reference the briefing on constructive reduction to practice in the 2356 appeal into this appeal? I think we are trying to incorporate by reference. All right. Are you allowed to do that under our law and under FRAP 28, incorporate briefing from different documents into your briefing? I think this is a special situation, Your Honor, because of the way that these issues were briefed. First of all, the Board in this case didn't separately address the question of diligence and just referred to the identical question that was briefed in the prior appeal. At the time that we were briefing this case, we didn't know that the Court wouldn't address that in the prior appeal. It was fully joined in the other issue. And in our brief, we referred to the briefing in that case. And TELFX, in response, also referred to its own briefing. Right. I'm just trying to understand here. We have a 14,000 word count limit to our briefing. You're at 13,979. And on page 41, you want to incorporate 20 pages of briefing from a separate appeal into this brief, which would obviously blow right through the 14,000 word count. So we have other case law that says you're not permitted to do that as well under Rule 28. So I'm trying to figure out what to do here. We've got a 14,000 word count limit that's being blown through. And likewise, we have a pretty strong precedent that says you're not allowed to incorporate by reference arguments made in other documents into your briefing. So I don't know if we can read this as a permissible incorporation by reference. I think that the briefing, the issue has been fully briefed in the other appeal. I understand your court's concern about the page limits, but I think we would ask the court to reach the issue anyway because it's an important issue. So that would require us to go ahead. You'd want us to go dig out those 20 pages and read those and then figure out whether it's persuasive in order to reach this issue. Yes, Your Honor, and I'm prepared to argue the issue today. You didn't make a motion to exceed the word count. I believe that early in this case, it had been consolidated with another case. And we actually did ask to exceed the word count, and this court denied that motion. I mean, you were presumably denied. Yes, Your Honor. So it looks like you made a bet here at page 41. You made a bet that an earlier pending appeal would resolve this diligence question and that you ask for whatever beneficial consequences in that earlier appeal to be adopted here. But, of course, that issue, the bet you made that that issue would be resolved did not come true. And so there's nothing in any other appeal that we can use for your benefit here in this appeal. Your Honor, we thought that we were doing the right thing by abiding by the decision that would be made in the previous case when the issues were exactly the same. And the board had expressly referred to its opinion in that other case and the evidence and the arguments there. And we thought that the board would address it. And we think still the board should address it because the issue is important and that the court has everything that it needs in order to decide the issue in the briefing in that prior case. I think Teleflex would not be prejudiced by the courts deciding the opinion now. It had a full and fair opportunity to look at that issue, to brief that issue in the other case. And it took it. And the issue is fully joined and should be decided now. Why don't you move on and discuss the actual reduction of practice? Certainly. I think the board was wrong here to find that Teleflex actually reduced its invention to practice, even though Teleflex didn't perform every step of its claimed method. It's undisputed here that Teleflex's claims recite steps that are performed in a body. And it's undisputed that Teleflex never did that. And so the question here is whether the testing Teleflex allegedly did do, testing in a benchtop model, satisfied the standard for actual reduction to practice of claims that are limited to being performed in a body. And I think the answer under this court's case law is no. And for example, in Ray Steed, this court explained that to demonstrate actual reduction to practice, the patentee has the burden to show two things. First, that he constructed an embodiment or performed a process that met all the limitations of the claim. And second, that he determined that the invention would work for its intended purpose. In the board's opinion, they used a physical model that replicates the anatomy in which the method would be used. And so, are you questioning whether that adequately replicates the anatomy? I think that whether it adequately represents the anatomy for the purposes of determining whether the invention would work for its intended purpose is a separate question from whether Teleflex actually performed every limitation of its claims. When its claims include advancing the distal end of a guide catheter through a main blood vessel. This isn't an infringement analysis where an accused infringer has to perform every step of a claim. This is a question of reduction of practice where the activities that are performed reliably indicates that the invention would work. I think those are two separate questions under this court's case law and that that's what the board got wrong here. That the board's decision that the testing in a benchtop model was adequate because it allegedly verified the viability of that claimed method or was sufficient to show that it works, that speaks to the second part of the reduction to practice inquiry, which is whether it works for its intended purpose. But it doesn't speak to that first part under this court's case law, which requires that an applicant have performed a process that met all the limitations of the claims. Those are two separately numbered requirements in the standard recited in Ray Steed and that standard comes up over and over again in this court's case law. Same standard listing two separately numbered requirements in Z-4 Tex versus Microsoft, in Cooper versus Goldfarb, in Berry versus Medtronic, and the Raytheon Co. versus Sony Cord case that we cite. And so even in the situation where a patentee is showing actual reduction to practice for prior inventorship, not just in an infringement case, you still have to show that you performed a process that met all of the limitations of the claims. Well, the board here did seemingly rely on Cooper, right, on page 45, but it seems to have quoted Cooper as saying more than it actually said, right? Yes, I think so. The board relied on Cooper. I mean, it's a straight cite on 45 to a page in Cooper, but the citation to Cooper does not include the keywords of in a model that sufficiently met all the limitations. That's not language I could find. Certainly, Your Honor. And Cooper, again, recites the standard that you have to have performed all the limitations of the claim separate from showing that the claim worked for its intended purpose. And here, Teleflex simply did not do that. And its arguments in response just seek to excuse its failure to perform every step of the method one way or another. It contends that Medtronic is somehow arguing for a new law that a method related to anatomical features has to be performed in vivo for patenting. But Medtronic isn't advocating for any new law here. Medtronic only seeks to hold Teleflex to the same reduction to practice standard as any other patent owner. It has to prove performance of a method that met all of its claim limitations. What about DL-Alt? Are you familiar with that opinion? Yes, Your Honor. Weren't there some differences between the laboratory procedures identified there and the actual claimed method? But nevertheless, it was fine. It was good enough for actual reduction to practice. I think the laboratory method was found to have met every limitation of the method claim in that case. I would also cite to the court the Fujikawa v. Watanason case that we cited in our brief, which I think is illustrative of the situation here. There, there were claims to a pharmaceutical compound and separate claims to a method that required administering that compound to a patient. And it was found that the compound claims had been reduced to practice as of in vitro tests that showed that the compound had some practical utility. But the method claims that required administering it to a patient weren't reduced to practice until two months later when successful in vivo testing of that compound was completed. And I think that's similar to the situation here where Teleflex has some device claims that it may have constructed prototypes of and tested in a model to determine that they would work for its intended purpose. But that's not the same as performing every step of the method where the method claims recite coronary artery and a blood vessel. And that can't be shown in a plastic bench top model. Will we save the remainder of your time for bubble? Yes, Your Honor. Mr. Winkles. Thank you, Your Honor. May it please the court. I would like to talk about the actual reduction of practice issue because it's an interesting issue. But I would like to start with diligence and constructive reduction of practice because this is a separate and independent basis for this court to affirm. And did you make the argument, show me where in your brief you made the argument that it was, what was your argument about to be that it was forfeited because it wasn't articulated in blue? And where is your argument? It's on page 34, or I'm sorry, 33 of our brief. And what we said is, assuming the court is going to consider this argument, which is we don't think the court should. And I would say what. What did you say? We said we don't think the court should. Assuming the court is willing to consider such an argument, the board's finding of construction reduction of practice is based on substantial evidence. So you think that's an argument that we shouldn't consider it because it wasn't sufficiently raised in blue? What I would say, Your Honor, is. It's getting a lot of words to assuming. I agree with you. And I think the important point is what they asked this court in their brief was far more narrow, far more narrow. To Judge Chin, your point. What they said in their brief, and I will quote, they said, If this court vacates the board's diligence holding, it should likewise vacate the board's decision hearing. They made a bet. They took a risk. They wanted to allocate more pages of their brief to the other issues that they've now abandoned and did not put those arguments in this brief. They made a bet. And unfortunately, this court declined to vacate the board's decision in 2356. So the assigned diligence is waived. One argument that they've made is that if this court vacated that this in the 2356, then it should vacate here. This court did not do that. And I don't know if it's either waiver or it's just addressing the argument they made. It did not come to fruition. And I think the board's decision that ETO is not prior art based on diligence and constructive reduction of practice stands. Let me comment on the waiver of a waiver here. Is there such a thing as a waiver of a waiver? I mean, if we don't think that you sufficiently made that argument, assuming court, I mean, everything you've said today, I don't think is in the brief. Right. I think we said, you know, in a kind way, if the court is going to adopt this or even accept this argument. So is it necessary for you under the law to preserve your argument that they have waived it in order for us to establish to do it? Or is that just independent irrespective of what, even if you said nothing? I think it's a great point. And I think we could have said nothing, Your Honor. I think it is independent. I'm not aware of any waiver of a waiver. And I think it's also important to note that they didn't even ask the court in their brief to incorporate these other 20 pages by reference. That was a request made in a Rule 28J letter where they asked the court to address this issue in a separate brief, in a separate appendix. To your point, Judge Chen, I had to have my colleague carry extra binders for me to bring a separate appendix just in case this court was going to entertain that. And I don't think that's proper. And that's precisely why this court has rule in this. Can I move on to the sort of merits argument? The cases that, you know, both sides has cases in their pocket. And I guess what bothered me is what I raised with your friend, which is that the board's analysis seemed to hang substantially on Cooper, on 45. But they're not saying what Cooper said. It's not a direct cite. And they're inserting the key words that are at issue in this case. They insert in a model that sufficiently met all the limitations. That language is not from Cooper, correct? That is correct, Your Honor. So what does Cooper do for them? I mean, the board relied on Cooper. Where does Cooper give them a basis for saying that this model is sufficient? So I don't think that basis necessarily comes from Cooper itself. I think what we see in this court's law is we see this two-part test layout that to reduce the practice, you have to build the device or practice the claim method and prove it worked for its intended purpose. And we see the case law repeatedly say that. But Medtronic has not cited cases. What does it actually mean to perform the claim method? And Cooper doesn't tell us what that means. And the cases that Medtronic has cited doesn't tell us what that means. What Medtronic's position here is is that this is a very rigid, strict rule. There is absolutely no flexibility, no leniency, and you have to do exactly what's in the claim method. And that, Your Honors, is not the law. Well, what is the law then? What is the law that the board relied on in reaching the conclusion it did here? The board did not rely on any law that reaches that conclusion. What the board relied on was more of a public policy argument of that it doesn't make sense to require exactness. And that's partially Medtronic's fault because Medtronic didn't point any law to the board to say it required exactness. But do you understand my concern? I mean, the board's language is to establish actual reduction to practice, the patent owner must demonstrate two things. And it cites the two things, and it doesn't have quotations. But then it cites to a page in Cooper that doesn't support what they've said the two themes are. I mean, it goes a step farther, which is necessary to answer the case here, but wasn't in Cooper. Yes. So you're saying there's no law to support what the board did here, but it's a public policy thing that we should apply? Is that your position? No, Your Honor. My position is that there is actually law that does support this, and that's this In Re Spiller case that we cited to Your Honors. It is not in our brief, but it is binding precedent from the CCPA from the 1970s. And this court—  I'm sorry. There's so many cases floating around here. Yes. You said it's not in your brief. Correct, Your Honor. Did you cite it to the board? We did not cite the case to the board. And you didn't cite it to us? We did in a supplemental authority under Rule 28J, we did. Okay, and you said it's a 1968 case? It's a 1974 CCPA case. Well, is that what 28Js are made for? I mean, I thought 28Js were if something happened following the briefing that's relevant to this, a new case or whatever. This obviously is not in that category. Correct. So why is that an appropriate citation that we should consider in a 28J? We looked at that and did not find any authority that the 28Js cannot be used to cite authority that was not cited in the briefing. And I would point out, even in the Spiller case, this court's predecessor recognized that no party had cited these cases that they were relying on in Spiller. It's a narrow corner of the wall that has not been well-developed. And candidly, Your Honor, ideally we would have had this case before. We turned it over in a 28J letter immediately when we found it, turned it over to Medtronic. And it's really important for this court to get this question right because the CCPA addressed this exact issue. The issue of, have you reduced a practice when you have done something less than exactly what is in the claim? And the CCPA, in Judge Rich's opinion, said you have, the rule does not require exactness. There is flexibility. And the standard that was set in the Spiller decision is if what you did is an obvious variant of what is in the claim, you have sufficiently reduced the practice. And what the Spiller decision does, it cites back actually to the Stryker case. And it addresses a, it discusses an anomalous situation that had Teleflex claim, the broader claim of saying, use this device in a simulated or actual coronary artery. Then our evidence would have been sufficient to reduce that to practice. And what Spiller says is it would be an anomalous result to find that the broader claim is reduced to practice. But the more narrower claim that is simply an obvious variant is not. And you might ask. What about the case cited by your opponent that said the compound claim was reduced to practice but not the method claim? So in that case, there was evidence that when they actually put it in the body, it didn't work. This case is very different. In this case, we have evidence, unrebutted evidence from our experts, from our inventors that said using this in a coronary model simulates, replicates the native anatomy. We have evidence that medical device companies have routinely used this, these models. And that evidence was unrebutted. And the board made a finding. Was that evidence missing in the case cited by opposing counsel? I don't know all the evidence that was in that case, Your Honor. But I believe that the facts of that case, when they actually put that evidence in the body, it just did not work. And we're just in a different factual situation here. And ultimately, it is a fact finding by the board that the model accurately replicates the native anatomy. You said there's no case supporting your position. Is there a law contrary to it, stating the opposite? I don't think so, Your Honor. Let me discuss two cases. I do think there's a case supporting our position, which is In Re Still. And I think that case is on all fours with the exact issue that's in front of this court. The Maherker decision, which we do cite, is also in line with this. To Judge Chin, your question about the facts that I believe are in front of the D.L. Loud case. The Maherker decision is another one that is very similar. If you look at the facts of the case, sometimes I think in the law, the parties, we cite these legal principles, and we don't look at the facts. If you look at the facts of Maherker, Maherker built, it was a catheter case. The claim in Maherker said a blunt distal end to prevent the end of the catheter from traumatizing or becoming caught in the walls of the vessel. The facts of that case, Mr. Maherker built a device made of an admittedly brittle material. In other words, it could break off and cause trauma. And he tested the device in his kitchen. So he did not build a device that was exactly as claimed, and he did not test the device exactly as claimed. And this court held that there is reduction of practice. Counsel, do you think we could support your position either with actual reduction of practice or constructive? Yes, Your Honor, I do. I think they are two independent bases. To your question about cases to the contrary. What's interesting is if you dig in, I do not think there's a case to the contrary of Spiller. I have not found one, and we have looked. What you will find is cases in the interference context. And that's what Cooper was, I think is important to note, in the interference context. And there's another case, Eaton, in the interference context. And that case is 204 F3rd 1094. In the interference context, this court has said that that two-factor test is very rigid. You do need to have exactness, and that makes sense in the interference context, where we're not talking about exactly did you do something, did you reduce the practice, exactly what's in the claim. In the interference context, recall what the court does is establishes the count. It tries to find the overlapping subject matter that they say this is the subject matter of the invention. And in the interference context, this court has said the two-part test is very rigid. But in the context we're in today, where we're trying to swear behind a reference, the CCPA in Spiller said address this issue and said there is not rigidity, that there is flexibility, provided what you did is an obvious variant. Did you cite a herker before the board? Did the board, I can't find. We did, Your Honor. Both sides actually cited a herker to the board. That issue, the facts in the herker and exactly what was being built and tested, I don't think all those facts were drawn out to the board, but we did cite that case to the board. And did the board rely on it? I think the board relied on the herker for the second prong of the test, which is proving the device to work for the intended purpose, and the idea that you can use simulation for the second prong as well. With my remaining time, you know, one case that Medtronic does cite for support of their very rigid rule is that you have to do exactly what's in the claim, is the Supreme Court's decision in FAF. If you go to the Supreme Court's decision in FAF, it does not set out this two-part test that I said is used in Medtronic's proceedings. What FAF says is that a method is reduced to practice when it is successfully performed. But FAF doesn't say what that means. What does it mean to be successfully performed? But if you continue to read in FAF in the Supreme Court's decision, what you see is they have a footnote at the end, and it talks about what is reduction of practice, and it harkens back to some cases from the 1920s of what is reduction of practice. And it's in footnote 12. Footnote 2 is where they say perform the process, sufficiently perform the process. Later in the opinion, when they get to footnote 12, they analyze all these historical reduction of practice cases. And what the Supreme Court said is, the historical case law on reduction of practice is best understood as indicating that, and I quote, an invention's reduction to practice demonstrated that the concept was no longer in an experimental phase. That's really what reduction of practice is. And that's exactly what we have here. There is absolutely no dispute in this record that when Teleflex took this device and put it in the model, that experimentation was complete. The invention worked, and that evidence is unrebutted. I'm out of time. Thank you, Your Honors. Thank you, Counsel. Your time has about three minutes. Thank you, Your Honors. I want to start with addressing the Spiller case. First, I agree with Judge Prost, this is not a case that they cited to the board and not a case that the board relied on in any way. But it's in the law. It's in the law. It's in the law. And to the extent that it relies on this idea of there being a basic invention or the heart of the invention and that all that a patent applicant has to do is something less than the claims in order to reduce it to practice, I think that's hard to square with the Supreme Court's recognition in the Arrow Manufacturing case that there's just no such thing as a legally recognizable gist or heart of the invention. The Supreme Court and this Court have emphasized instead that the invention is defined by the claims and should be measured by the claims. And this Court's more recent articulations of the standard for reduction to practice as requiring a performance of a process that met all the limitations of the claim, I think is consistent with that idea that it's the claim that defines the invention. And if you're going to prove actual reduction to practice, prior invention through actual reduction to practice, what you should have to prove is that you actually reduced to practice your claim. Even if we agree with you, don't you lose on constructive reduction to practice? No, Your Honor. I think that the board here relied on an impermissibly weakened form of the correct legal standard on diligence and that under the correct legal standard, Teleflex was required to prove that it was engaged in reasonably continuous work through the entire critical period. But what if we decide that your argument on diligence is not before us? If you decide that the argument on diligence is not before you, then I agree, Your Honor, that you can affirm the case. But I think that you should decide the diligence question and that the reduction to practice, and that Teleflex also failed to show that it actually reduced its claims to practice. I think I want to just make a few more, while with my 25 seconds remaining, I'll just say that I think that the rule in In Re Spiller that Teleflex seeks to rely on, that there's something less than the claims that can show prior invention, there's just no need to stretch that law on actual reduction to practice because the applicant can always constructively reduce its invention to practice by just filing their application. Even if an applicant delays filing, you can still swear behind a reference by showing conception followed by diligence. And so it's not too much to ask someone who wants to swear behind a reference without showing diligence and show that they deserve a monopoly on something that somebody else disclosed to say that they have to have performed every single step of the claim. As the claim was written by them, Teleflex wrote this claim that required a blood vessel and a coronary artery, and we know that it didn't have to do that because it has related claims and other patents that don't recite those limitations. But if that's the claim that it wants, and that's the coverage that it seeks to prove prior invention, it should have had to perform every single step of that method. Thank you, counsel. We have your argument, and the case is submitted. Thank you.